UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERIE INSURANCE EXCHANGE,<br>*as Subrogee for Empire Lofts Condominium Ass'n*<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>AC&R FOAM INSULATORS, LLC,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 15-0792 (ESH) |

## MEMORANDUM OPINION

Plaintiff Erie Insurance Exchange, acting as subrogee of Empire Lofts Condominium Association, seeks recovery against defendant AC&R Foam Insulators, LLC, for payments plaintiff made to its insured following a March 15, 2014 fire at the Empire Lofts building. (Am. Compl., Jan. 22, 2016 [ECF No. 14].) Plaintiff alleges that defendant negligently installed flammable soundproofing foam too close to a chimney flue, and that defendant's negligence caused the fire and resulting damage to the building. (*Id.*) Before the Court is defendant's motion for summary judgment (Def.'s Mot., May 25, 2016 [ECF No. 22]), plaintiff's opposition (Pl.'s Opp., June 23, 2016 [ECF No. 23]), and defendant's reply (Def.'s Reply, July 11, 2016 [ECF No. 24]). For the reasons that follow, defendant's motion will be denied.

## BACKGROUND

In January 2013, Pierson Stoecklein, then-owner of Unit F of Empire Lofts, hired contractor Renaissance Development to reduce the noise transfer between his apartment and the

one above it–Unit H.  (Def.'s Mot., Ex. 1, ¶ 3.)  On April 5, 2013, Renaissance Development subcontracted with defendant to install foam soundproofing in Unit F.  (Def.'s Mot., Ex. 4.)[1]

There is a fireplace along one side of the living room in Unit F.  (*Id.*, Ex. 2, ¶ 11.) Behind the fireplace is a "chimney chase," an enclosed space that protrudes a few feet from the wall and contains the chimney-flue system for Unit F and for two other apartments at Empire Lofts.  (*Id.*)  The hot air and smoke from the fireplaces in those apartments flow upward and out of the building through a chimney on the roof.  (*See* Pl.'s Opp., Ex. A, ¶ 32.)  The flooring next to the fireplaces, which the parties refer to as a "hearth," is made of stone, a different material than the rest of the flooring found in the apartments.  (Pl.'s Opp., Ex. A, ¶ 26.)[2]

On April 6, 2013, defendant sent a team of workers to Empire Lofts in order to install Icynene LD-C-50, a foam insulation, between Unit F and Unit H.  (Def.'s Mot., Ex. 2, ¶ 10.) Renaissance had already removed the drywall from the ceiling, leaving the area between the ceiling of Unit F and the floor of Unit H exposed.  (*Id.*, Ex. 2, ¶ 8.)  The walls of Unit F were already covered in plastic sheeting when defendant's employees arrived, and beneath the plastic, the drywall was still intact.  (*See* Pl.'s Opp., Ex. D, at *26, ¶¶ 3–4.)  Defendant's employees covered the floors with plastic before beginning the foam installation.  (*Id.*, Ex. D, at *26, ¶¶

---

[1]  Renaissance had previously hired Devere Insulation to install soundproofing insulation in Unit F.  (*Id.*, Ex. 2, ¶ 5.)  Devere installed loose-fill cellulose insulation in the area between the ceiling of Unit F and the floor of Unit H, but Stoecklin was ultimately not satisfied with the level of soundproofing the cellulose material provided.  (*Id.*, Ex. 1, ¶ 5.)  Renaissance thereafter removed the drywall covering the ceiling and the loose-fill cellulose insulation that Devere had installed above the drywall.  (*Id.*, Ex. 2, ¶ 8.)  On April 5, 2013, after Devere's loose-fill cellulose insulation had been removed, Renaissance hired defendant to install foam insulation in place of the cellulose material.  (*Id.*, Ex. 4.)

[2]  A hearth is customarily used to prevent charring or other damage to the flooring adjacent to a fireplace.  (*Id.*, Ex. A, ¶ 27.)

7–8.)  In order to install the foam, defendant's employees ran a hose from a truck outside filled with liquid Icynene to Unit F.  (*Id.*, Ex. F, at *17, ¶¶ 12–17.)  The hose was connected to a "small gun" that allows the foam to be sprayed on the desired target from eight to twelve inches away.  (*Id.*, Ex. D, at *22, ¶¶ 23–24.)  Adam Collins, defendant's employee, sprayed the foam insulation throughout the exposed space between Unit F and Unit H.  (*Id.* Ex. D, at *27, ¶ 3–5.)

On March 15, 2014, a fire ignited at Empire Lofts.  (Def.'s Mot., Ex. A, ¶ 8.)  The Empire Lofts Condominium Association thereafter filed this action, alleging that defendant was negligent in installing the soundproofing foam too close to the apartment's chimney-flue system, causing the fire and subsequent damage.  (Compl., May 29, 2015 [ECF No. 1].)[3]

Defendant argues that it is entitled to judgment as a matter of law based on plaintiff's failure to adduce evidence that defendant negligently installed the soundproofing.  Defendant principally reasons that, in order to prove negligence, plaintiff would have to demonstrate that (1) defendant "had notice of a chimney chase containing a 'chimney flue system' located behind a wall in Unit F," and (2) that defendant "despite such notice . . . installed foam insulation behind that wall."  (Def. Reply, July 11, 2016, at *2.)  As explained below, defendant misunderstands the nature of plaintiff's burden in this negligence action.

---

[3] Initially, the complaint listed as plaintiff Empire Lofts Condominium Association and listed as defendant "AC&R Insulation Company, Incorporated."  (*Id.*)  Reasoning that Empire Lofts had recovered, at least in part, from its insurer, defendant filed a motion to dismiss, or in the alternative, to identify Erie Insurance Company as plaintiff.  (Def. Mot., Dec. 21, 2015 [ECF No. 9].)  The Court denied that motion without prejudice but ordered that, if Empire Lofts had been compensated in full, the complaint would be dismissed unless Erie moved to substitute itself as plaintiff.  (Mem. Op. and Order, Jan. 7, 2016 [ECF No. 12].)  Pursuant to a consent motion, Erie was substituted as plaintiff.  (Consent Mot., Jan. 20, 2016 [ECF No. 13].)  Erie filed a second amended complaint, this time fashioned as a subrogation action.  (*See* Am. Compl.)  That amended complaint also listed the correct name for the business entity accused of negligence, AC&R Foam Insulators, LLC.  (*See id.*)

## ANALYSIS

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment is granted when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue of material fact is one that could change the outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Summary judgment is appropriate only when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1984).  The moving party bears the responsibility of showing the absence of any genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets this standard, the burden of proof shifts to the non-movant, who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250.

### II.     APPLICATION

In a negligence action arising under the tort laws of the District of Columbia, plaintiff bears the burden of establishing "the applicable standard of care, show[ing] that the defendant deviated from it, and demonstrat[ing] that defendant's conduct was the proximate cause of [the] injury."  *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 199 (D.C. 1991) (citing *Toy v. Dist. of Columbia*, 549 A.2d 1, 6 (D.C. 1988)).

Defendant acknowledges that "the origin and cause of the fire are matters of disputed expert opinion," but contends that there is no dispute as to "the facts concerning the manner and location of [defendant's] installation of the Icynene LD-C-50 foam insulation product, the information available to [defendant] . . . at the time the work was performed, and the conditions in Unit F when [defendant] performed its work."  (Def. Mot., May 25, 2016, at *3.)  According

to defendant, this means that plaintiff "has no facts demonstrating negligence on the part of" defendant since defendant "had no notice of a chimney chase . . . and it did not install the Icynene product within the chimney chase." (*Id.*) Thus, for purposes of this motion, the second prong–a deviation from the standard of care–is the central issue.[4]

Contrary to defendant's contentions, there remain disputed material facts as to whether defendant failed to act with reasonable care. First, it is disputed whether defendant should have known about the existence of a chimney-flue system behind the wall of the living room in Unit F, even if defendant did not have actual knowledge. There is, in fact, a fireplace in Unit F, which is set off from the living-room wall. (*Id.*, Ex. 2, ¶ 4.) Further, as Adam Collins, defendant's employee who installed the foam insulation, acknowledges, he saw "[t]here was a wall that bumped out . . . . three feet or so" that "could have been a chimney chase." (Pl.'s Opp., Ex. D, at *28 ¶¶ 14–19.) Defendant's employees uniformly recognize that, because Icynene is flammable, it is not to be sprayed over a heated surface like a chimney flue. (*See id.*, Ex. D, at *31, ¶¶ 5–7; *id.*, Ex. F, at *17, ¶¶ 2–4; *id.*, Ex. H, at *35, ¶¶ 6–18.) Notwithstanding the fact that there was plastic sheeting on the walls, a reasonable jury could find that defendant's employees knew or should have known there was a chimney flue system behind the living room wall. Indeed, Scott Cameron, defendant's Rule 30(b)(6) designee, admitted that an AC&R employee "inspected and measured" Unit F in order to prepare the proposal, which includes a

---

[4.] In its reply, defendant appears to argue for the first time that plaintiff's claim should be dismissed since plaintiff has failed to "designate[] an expert to speak to [defendant's] standard of care." (Def. Reply, at *2.) The Court therefore need not address this argument. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992) ("To consider an argument discussed for the first time in reply would be manifestly unfair to the appellee who, under our rules, has no opportunity for a written response.")).

"visual inspection of the area where the customer would like . . . insulation." (*Id.*, Ex. H, at *14 ¶¶ 21–25, *15 ¶¶ 3–4.)

Second, assuming defendant knew or should have known of the existence of the chimney-flue system, whether defendant installed the foam in a manner that could have caused foam to enter the chimney chase is disputed. Plaintiff has adduced evidence that defendant was the only contractor to install Icynene foam insulation (*see* Def.'s Mot., Ex. 2, at ¶ 7, ¶ 9), and that Icynene foam insulation was found inside the chimney chase and in contact with the chimney flue system (*see* Pl.'s Opp.., Ex. A, ¶ 23). Even if, as defendant contends, defendant's employees did not spray the foam directly into the chimney chase, there still exist contested material facts as to whether the manner in which the foam was installed created an unnecessary risk. Plaintiff has come forward with evidence that Icynene foam expands and can spread through even small cracks in walls (*id.*, Ex. C, at *82 ¶¶ 16–18), and that Renaissance's removal of the drywall ceiling exposed joists where the chimney chase meets the ceiling (*id.* Ex. G, at *18 ¶¶ 16–20; *id.*, Ex. A, at ¶ 18). The material facts on which defendant's alleged negligence are premised are therefore disputed.

## CONCLUSION

Accordingly, and for the reasons stated above, defendant's motion for summary judgment is **DENIED**. A separate Order [ECF No. 26] accompanies this Memorandum Opinion.

/s/ *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date: September 26, 2016